Cecil, Admr. of Owens, *vs.* Negro Rose, *et al.*

(Decided March 26th, 1861.)

WILLIAM CECIL, Admr., of MERCY OWENS, *vs.* NEGRO ROSE and others.

A testator died in 1821, leaving a will, bequeathing a negro girl, Rose, to his wife, whom he appointed his executrix. The wife died in 1831, leaving a will, by which she bequeathed the same negro to her daughter, *to serve for seven years and then to be free.* No administration was granted upon the estate of the testator or testatrix till 1857, when letters thereon were granted to the appellant, who took possession of Rose and her children, who had been going at large and acting as free since 1838. In 1860, Rose and her children, born after the expiration of the said term of seven years, filed their petition for freedom against the appellant. HELD:

1st. That the wife not having qualified as executrix, could not, in *that character*, dispose of the testator's property, but as *legatee*, she had before administration, an *inchoate title*, derived from the will, which it was competent for her to assign or dispose of by her will.

2nd. That when administration was afterwards granted to the appellant, her title, or that of those claiming under her, became complete; it related back to the testator's death, and may be asserted against the appellant, his administrator, in the same manner as if such administration, had been granted in the lifetime of the wife.

3rd. That it, therefore, follows that it was not necessary for the petitioners to prove that administration upon the estate of the testator had been granted in the lifetime of the wife, and that the administrations granted to the appellant were sufficient to enable the petitioners to maintain their suit, if in other respects they were entitled.

Though in order to vest in legatees or next of kin a *complete title*, adminis-

Cecil, Admr. of Owens, *vs.* Negro Rose, *et al.*

tration is necessary, and though, by our laws, an executor, to be clothed with full power and authority to act, must qualify *as such*, yet a legatee, before administration, or assent of the executor, has an *inchoate* title, assignable, devisable and transmissible to his personal representatives.

In cases of petitions for freedom the *onus* of proof, to show insufficiency of assets to pay debts, without resort to the manumitted slaves, is upon the administrator and not upon the petitioners.

Recitals in a deed between parties under whom the petitioners do not claim, are mere declarations of third parties, not binding upon the petitioners, and not admissible in evidence.

An account against an estate, not due to the claimants jointly but in severalty, cannot be verified according to the requirements of the Act of Assembly, by the oath of three of such claimants only.

An affidavit, "that the above account is just and true as it stands stated, and that they have not, nor hath any other person for them, (to their knowledge,) received any part, parcel, security or other satisfaction for the same," is not according to the requirements of the Act of Assembly.

If a party sells land to which he had no title and receives the purchase money therefor, he is bound to repay the money to the purchaser, but he could not thereby become the *legal debtor* of the owner of the land.

APPEAL from the Circuit Court for Prince George's county.

*Petition for freedom,* filed on the 20th of January 1860, by the appellees against the appellant, in the circuit court for Anne Arundel county, and thence removed, on suggestion of the petitioners, to the circuit court for Prince George's county for trial.

*1st Exception.* The proof on the part of the petitioners shows, that Samuel Owens, Sen., died in 1821, leaving a will duly executed, by which he bequeathed negro Rose, one of the petitioners, to his wife, Mercy Owens, whom he appointed his executrix. Mercy Owens (the legatee) died in 1831, leaving a will, by which she bequeathed the same negro, Rose, to her daughter, Tabitha Macbee, "for seven years after my decease, after the expiration of which term of servitude, I will the said mulatto woman Rose to be liberated and forever set free from slavery," and appointed her son, James Owens, her executor. The other petitioners are children of Rose, all born after the expiration of the said term of seven years. After the death of Mercy Owens, Rose went into the possession of Tabitha Macbee, the legatee, who, after

holding possession of her for two years, sold and conveyed her to James Clarke, to serve for five years from the 28th of May 1833. Rose then went into possession of the said Clarke, and served him for five years, after the expiration of which period she went at large and acted as free, and continued so to act until 1857, when she was taken possession of by the defendant, after he had obtained letters of administration upon the estates of Samuel Owens, Mercy Owens and Mercy Owens, Jr., a daughter of the said Samuel and Mercy Owens. These letters were granted, the one on the 13th of July 1857, and the other two on the 8th of September 1857.

The defendant then offered in evidence the aforesaid letters of administration granted to him, which were proved by the Register of Wills of Prince George's county, to be the only ones ever granted on said estates, as appears by the records of his office. He then proved that the said Mercy Owens, Jr., died in 1809, without issue and intestate, and that in 1818 the said Samuel Owens, Sen., sold to his son, Samuel Owens, Jr., a tract of land for $700, the son paying therefor $300 in cash, and delivering Rose, then a child six years old, at a valuation of $200, and entering into possession of the land, which he held until his death.

The defendant then offered in evidence two deeds, duly executed, acknowledged and recorded, the one dated the 12th of September 1808, by which Samuel Owens, Sen., conveyed to his daughter Mercy Owens, Jr., a tract of land for the consideration of $800, the other dated the 20th of February 1834, from Joseph Owens and others, heirs at law of Mercy Owens, Jr., to Samuel Owens, Jr., reciting the deed from Samuel Owens, Sen., to Mercy Owens, Jr., and the death without issue and intestate of Mercy Owens, Jr., the subsequent sale by Samuel Owens, Sen., to Samuel Owens, Jr., of the said land previously conveyed to Mercy Owens, Jr., in 1808, and the payment of the purchase money by Samuel Owens, Jr. The defendant accompanied the offering of these deeds with evidence to show, that the land included in them was the same which Samuel Owens, Jr., had purchased from his father, and that the grantors in the deed of 1834,

were the legal heirs of Mercy Owens, Jr., the grantee in the deed of 1808, and in offering the above evidence the defendant's counsel stated, that the same was offered for the purpose of showing that Samuel Owens, Sen., died indebted, and that the said negro girl Rose was the only property left by him at his death as assets for the payment of his debts, but the court (CRAIN, J.) on objection by the petitioners, rejected said offered evidence and refused to allow it to be given, and to this ruling the defendant excepted.

*2nd Exception.* The defendant then renewed the offer of the above evidence, and accompanied the same with further evidence to show that the following account of Mercy Owens, Jr's, heirs vs. Samuel Owens, Sen., for $500 with interest from 1817, had been twice presented to the orphans court of Prince George's county, which said court declined acting on until this pending petition for freedom was determined, viz:

"Estate of Samuel Owens to Charles Owens, Walter Owens, assignee of Richard Owens, Joseph Owens, Joshua Owens, administrator of Benjamin Owens, William Cecil, surviving husband of Nancy Owens, (deceased,) John Turner administrator of Richard Turner, Thomas Macbee, surviving husband of Tabitha Macbee, and Basil Owens, administrator of James Owens,    -    -    -    -    **Dr.**

"1817. To this sum received by the deceased Samuel Owens in cash and the appraised value of negro girl named Rose, for and on account of part of the purchase money paid by Samuel Owens, Jr., to Samuel Owens, Sr., for a tract of land belonging to Mercy Owens, (daughter of Mercy and Samuel Owens, Sr.,) which was sold after the death of said Mercy Owens, the daughter, by her said father, Samuel Owens, and the part of said purchase money received by him to the use of the above named parties, as the legal owners of said land, they being the co-heirs, together with Samuel Owens, Jr., of said land so sold by Samuel Owens, the father, to Samuel Owens, the son,    -    -    -    -    $500 .

"To interest on the above amount until paid.

"PRINCE GEORGE'S COUNTY, *Sct:*—On this 19th day of October, in the year of our Lord 1857, before the subscriber,

Register of Wills for said county, personally appeared, Richard Owens, John Turner, administrator of Richard Turner, and Joshua Owens, administrator of Benjamin Owens, and made oath on the Holy Evangely of Almighty God, that the above account is just and true as it stands stated, and that they have not, nor hath any other person for them, (to their knowledge,) received any part, parcel, security or other satisfaction for the same.     Sworn before,

WILLIAM A. JARBOE, Register.''

And the defendant also accompanied the same with the further evidence, that on several occasions since 1857, he had applied, as adminstrator of Samuel Owens, Sen., to said orphans court, for an order to sell the petitioners for the purpose of paying the debts of said Owens, but that the said court refused to pass such order because of the pendency of this petition. But the court rejected said evidence so renewed and offered, and to this ruling the defendant excepted.

*3rd Exception.* The defendant then asked the following instructions to the jury:

1st. If the jury find from the evidence aforesaid, that the negro woman Rose, was the property of the said Samuel Owens, the elder, at the time of his death, and that he died in 1821, and if they further find that no administration was granted on his estate until 1857, and if they further find that Mercy Owens, the legatee named in the will of Samuel Owens, the elder, took said Rose and held her until her death, and that said death occurred in 1831, then no title to said Rose vested in said Mercy Owens, and the said Mercy Owens was incompetent to manumit her by the will offered in evidence; even if the jury find the same to be the will of said Mercy Owens, the legatee aforesaid.

2nd. That the petitioners cannot derive freedom under the paper writing offered in evidence, and purporting to be the last will of Mercy Owens, unless the jury find from the evidence aforesaid, that there has been a final settlement of the administration granted on her estate, and that the liberation of said petitioners would not prejudice the creditors of said Mercy Owens.

3rd. That upon the whole evidence it is competent for the jury to find that there was no administration on the estate of the testator and testatrix, whose wills have been read in evidence by the petitioners, until the defendant administered thereon, and if the jury find that there was no such administration, then it is competent for the jury to find that the petitioners cannot claim their freedom under the alleged last will of Mercy Owens, as read in evidence.

The court refused these instructions and to this ruling the defendant excepted, and the verdict and judgment being in favor of the petitioners, he appealed.

The cause was argued before TUCK, BARTOL and GOLDS-BOROUGH, J.

*Jno. P. Poe* and *Robert J. Brent,* for the appellant:

1st. The points presented upon the first and second exceptions, are substantially the same. The evidence offered showed that Samuel Owens, Sen., received the purchase money of a farm which belonged to the heirs of his daughter. The money which he received was obtained by him for their use, and his estate is therefore a debtor to them for that sum, with the accrued interest. Now the inquiry here is, are the petitioners entitled to freedom? This depends entirely upon the condition of Samuel Owens' estate. If that portion of his estate primarily chargeable with his debts, was sufficient to pay them, then, independently of other and further objections, the appellees might be entitled to their freedom. But here we have an undoubted claim upon that estate proved by oral evidence, and the recitals in the deed of 1834. Surely this testimony was sufficient to show the existence of a fact which has been decided to be a flat bar to the right of a negro to his freedom. 2 *H. & G.,* 1, *Negro George vs. Corse.* By sec. 13, of the Act of 1796, ch. 67, manumissions by last will and testament, are allowed on the express condition that no such manumission *"shall be effectual to give freedom to any slave or slaves, if the same shall be in prejudice of creditors."* The purpose of the testimony offered, was to show that there

were creditors whose claims might be prejudiced by the liberation of the appellees, the only assets of the testator liable for his debts. But it is said this claim is not a valid one, and, therefore, need not be regarded. It would be difficult to maintain that the validity of claims against a testator's estate could be inquired into at all in a proceeding of this character, but conceding, for the sake of the argument, that so wide a field is capable of being thus opened, what is there here to show that the claim is not legal? The deed of 1834, is a *ratification* merely of the contract of sale of 1818; its object was to confirm the title of the grantee therein, he having in good faith paid for the land. It cannot be made in any manner to operate as a release from the heirs at law of Mercy Owens, Jr., to Samuel Owens, Sen., nor is it in any sense evidence of payment by Samual Owens, Sen., to such heirs. Nor can the legality of the claim be affected by limitations, there having been no administration on the debtor's estate until 1857, and the administrator being under no legal obligation to plead the statute, even if it would be effectual.

2nd. The prayers offered by the appellant, and embraced in the third exception, present substantially the same proposition, viz: *that letters of administration in cases like the present, are indispensable; that there must be administration before title to personal property can pass.* In Maryland, all negroes are presumed to be slaves, and there were, up to the 1st of June 1860, but two modes of manumission, viz: by last will and testament, and by deed duly executed, acknowledged and recorded. A running at large and acting as free, with the knowledge and consent of the owner, for twenty years, under certain circumstances, authorize the presumption of a grant. 6 *G. & J.*, 136, *Burke vs. Negro Joe.* 9 *Gill,* 135, *Anderson vs. Garrett.* Moreover, manumissions by last will, which is the ground relied on here, are expressly prohibited, *if in prejudice of creditors;* they are only tolerated after payment of the testator's debts. So long, therefore, as there *were or might be* any outstanding debts, a liberation by last will cannot be effectual. The *onus* of proof is on the petitioners to show that there were no debts, or, if there were

debts, that there were sufficient personal assets for their pay-
ment, without resort to the manumitted slaves.   Now the
only mode by which it can be legally ascertained whether
there are outstanding debts, is by the granting of letters testa-
mentary or of administration.   It would seem to follow,
therefore, that manumissions by will cannot take effect where
there has been no administration.   But it is said, on the other
side, that so long a time has elapsed that the jury might be
authorized to presume that the estates of Samuel and Mercy
Owens, Sen., were fully administered, and all debts paid.
This court, however, in a case much stronger than the pre-
sent, have said, "that no such presumption can legally arise,
there having been no letters testamentary granted."   9 *Gill*,
134, *Anderson vs. Garrett.*   The manumission by will, there-
fore, being insufficient to entitle the appellees to freedom, in
the absence of letters of administration, the only other ground
relied on, is, that negro Rose has been running at large and
acting as free for nineteen years—a period of time which, it
is submitted, is not enough to create the presumption, twenty
years uninterrupted duration being in all cases necessary, and
that even being insufficient, unless the knowledge and con-
sent of the owner are clearly shown, and unless there was
some person legally authorized to claim the negro thus acting
as free.   In support of these views, we refer to 10 *Md. Rep.*,
67, *Wilson vs. Smith;* 6 *Gill*, 323, *Cornish vs. Willson;* 8 *G.
& J.*, 245, *Alexander vs. Stewart;* 7 *Gill*, 84, *Gibbons vs.
Riley;* 3 *Bland*, 551, *Neale vs. Hagthrop.*

*Thos. G. Pratt* and *Thos. F. Bowie*, for the appellees:

1st.   The evidence offered in the first and second exceptions
was properly excluded.   It was offered for the purpose of
showing that negro Rose was the only personal property left
by Samuel Owens, Sen., and that he died *indebted,* but it
does not show or tend to show either a debt, or that Rose was
the only personal property of the testator.   The *recitals* in
the deed of 1834, bind nobody but the *parties* to that deed—
a *recital* does not bind even *privies in estate*, but *only parties*
to the deed—these petitioners are *strangers* to this instrument,

Cecil, Admr. of Owens, *vs.* Negro Rose, *et al.*

and have nothing whatever to do with its recitals. The account was not properly proved, according to the requirements of our Act of Assembly, but even if it was, it does not, upon its face, nor in connection with the deeds, show any *legal demand* in favor of the *claimants* against the estate of Samuel Owens, Sen. These alleged creditors claim under Mercy Owens, the daughter. Now if Samuel Owens, Sen., sold to his *son* land which belonged to his daughter, and received the purchase money, how can that fact make him a *legal debtor* to his daughter?

2nd. The ruling as to the prayers was also correct. By the Act of 1796, ch. 67, a master has the right to manumit his slaves by deed or will, *provided* such manumission *does not conflict with the interest of creditors,* and the *onus* of proving that it will prejudice creditors, is upon the administrator, who resists the petition for freedom. 7 *G. & J.*, 96, *Allein vs. Sharp.* 8 *G. & J.*, 165, *Wilson vs. Barnet.* 6 *Gill*, 335, *Cornish vs. Willson.* Now, as against Mercy Owens' estate, no debt is attempted even to be shown, and the second prayer, therefore, was properly rejected, and as against the estate of Samuel Owens, Sen., we have already shown no *valid debt* has been exhibited. The objection, therefore, that this manumission was in prejudice of creditors, is removed. But it is said that administration upon the estate of Samuel and Mercy Owens, was necessary to complete the petitioners' title to freedom. Now, without stopping to inquire what rights Mercy Owens, the wife, the legatee of her husband, had under his will, before grant of letters to her as executrix, it is submitted, that if administration upon these two estates should be considered necessary to complete the title of the appellees to their freedom, the administration upon them, in 1857, by the appellant, more than two years before this petition was filed, performed that office.

BARTOL, J., delivered the opinion of this court.

The record shows that Samuel Owens, Sen., died in 1821, leaving a will duly executed, by which he bequeathed negro Rose, one of the petitioners, to his wife, Mercy Owens, whom

he appointed his executrix. Mercy Owens (the legatee) died in 1831, leaving a will, by which she bequeathed the same negro, Rose, to her daughter, T. Macbee, for seven years, (after the death of the testatrix,) and after the expiration of which term of servitude, she willed Rose "to be liberated and forever set free," and appointed her son, James Owens, her executor. The other petitioners are children of Rose, *all born after* the expiration of the said term of seven years.

After the death of Mercy Owens, Rose went into the possession of T. Macbee, the legatee, who, after holding her in possession for two years, sold and conveyed her to James Clarke, to serve for five years from the 28th day of May 1833. Rose went into the possession of Clarke, and so continued for five years. At the expiration of which time she went at large and acted as a free woman, until she was taken possession of by the appellant, in 1857, after he had obtained letters of administration on the estates of Samuel Owens, Mercy Owens, and Mercy Owens, Jun., (the daughter of Samuel and Mercy Owens.) These letters of administration were granted to the appellant, one of them on the 13th day of July 1857, and the other two on the 8th day of September 1857. The petition for freedom was filed by the appellees on the 20th day of January 1860.

At the trial of the cause, three bills of exception were taken to the rulings of the circuit court. The first two involve questions of evidence, and the third presents the questions arising on the prayers offered by the appellant, and rejected by the court. In disposing of this appeal, the third exception will first be considered.

The first and third prayers embody the proposition, that it was incompetent for Mercy Owens, Sen., effectually to manumit negro Rose, by her will, unless there had previously been an administration of the estate of Samuel Owens, Sen.; and that the petitioners are not entitled to freedom unless there had been administration on the estates of Samuel Owens, Sen., and Mercy Owens, Sen., before letters granted to the appellant.

It is unquestionably true that legatees and next of kin must

derive their title through the executor or administrator, who alone represents the deceased, and in whom the law vests the personal estate; and in order to vest in the legatees or next of kin a complete title, an administration is necessary. *Neale vs. Hagthrop*, 3 *Bland*, 551, 564. *Alexander vs. Stewart*, 8 *G. & J.*, 246. *Snively vs. Beavans*, 1 *Md. Rep.*, 221.

But the question here is, what were the rights of Mercy Owens, derived under the will of Samuel Owens, Sen.? She was the legatee of negro Rose, and the sole executrix of the will.

By the English law, an executor might do many things in that character, even before probate; he might assent to and pay legacies, and where he is himself the legatee, his own assent to the legacy, either actual or implied, would vest the complete title in him. For cases illustrating this doctrine, see 1 *Williams' Excrs.*, part 1, book 4, ch. 1, sec. 2. 1 *Roper on Legacies*, 845, (*Ed. of* 1849.)

Under our testamentary system, the powers and rights of an executor have been materially altered and abridged. Although he derives his appointment under the will, yet, in order to clothe him with full power and authority as executor, and to qualify him to act, he is required to give bond and take the oath prescribed by law. Not having qualified as executrix, Mercy Owens could not, in that character, dispose of the property of the testator.

But, as legatee, she had a right to negro Rose, which vested upon the death of the testator; her title was derived from the will, and although, to perfect it, an administration was necessary, yet, before administration, she had an *inchoate* title, which it was competent for her to assign or dispose of by her will. When administration is afterwards had upon the estate, her title, or the title of those claiming under her, becomes complete; it relates back to the time of the testator's death, and may be asserted against the defendant, who is administrator, with the will annexed, of Samuel Owens, in the same manner as if such administration had been granted in the life time of Mercy Owens.

In 1 *Roper on Legacies*, 844, it is said: "Although, as we

have seen, the assent of the executor be necessary to complete the title of the legatee, yet, before such assent, the legatee takes an *inchoate* right in the subject, which is transmissible to his personal representatives, in the event of no disposition by will." See, also, 2 *Wms. Excrs.*, 1176, 1183.

It follows, from these views, that it was not necessary for the petitioners to prove that there had been administration of the estate of Samuel Owens, in the life time of Mercy Owens, and that the administrations granted to the defendant were sufficient to entitle the petitioners to maintain the suit, if in other respects they were entitled, and that the first and third prayers of the defendant were properly refused.

In our opinion, the second prayer was also properly refused, because there was no evidence of any debts due and owing by the estate of Mercy Owens, deceased. A question was raised, in argument, as to where the *onus* of proof rests, in a case like this, with regard to the amount of debts and the sufficiency of assets. On this point the Court of Appeals, in *Cornish vs. Willson*, 6 *Gill*, 335, refrained from expressing any opinion; nor has it ever been directly decided in Maryland. But in the case of *Wilson vs. Barnet*, 8 *G. & J.*, 165, the court said: "The proof of an insufficiency of assets, if such were the fact, was peculiarly accessible to the administrator; he had possession or title to all the effects of the deceased, and might be supposed, after such a lapse of time, to know all the debts of the deceased. This he should have established by the ordinary *media* of proof."

This is a strong intimation of the opinion that the burden of proof is on the administrator, not on the petitioner; and, after a full consideration of the subject, we think that is the most reasonable and just rule of evidence. There is no reason why a negro claiming freedom under a will, should be placed in any worse position, in this respect, than any other specific legatee. In all such cases, if the rights of creditors are set up to defeat the claim of the legatee, the burden is upon the administrator to show the insufficiency of assets. And as the defendant in this case failed to produce any proof

Cecil, Admr. of Owens, *vs.* Negro Rose, *et al.*

of indebtedness by Mercy Owens, deceased, the second prayer was properly refused.

We concur with the court below, in the propriety of rejecting the evidence offered in the first and second bills of exceptions. The recitals in the deed of the 20th of February 1834, were mere declarations of third parties, under whom the petitioners do not claim, and by which they are not bound, and we think that neither the deeds nor the account presented in the orphans court, were admissible for the purpose of showing a debt due by Samuel Owens, Sen., deceased. The account had not the *prima facie* proof required by the Act of Assembly. Even according to the theory of the appellant, the alleged debt from Samuel Owens, Sen., was not due to the claimants jointly, but in severalty, and could not be verified by the oath of three of them only; nor was the affidavit according to the requirements of the Act of Assembly.

But, apart from these objections, it is manifest from the appellants own showing, that the transactions described in the deeds, and the other evidence, could not establish any legal demand in favor of the claimants against the estate of Samuel Owens, Sen. There was no privity between them. If Samuel Owens, Sen., as alleged, sold land to Samuel Owens, Jr., to which he had no title, and received the money therefor, he might be bound to repay the money to the purchaser, but could not thereby become the legal debtor of the owner of the land. These alleged creditors claim under Mercy Owens, Jr., not under Samuel Owens, Jr., as assignee or otherwise. And for these reasons we think the evidence was properly excluded.

*Judgment affirmed.*

(Decided March 26th, 1861.)