WILLIAM KRIEG AND JENNIE KRIEG

*vs.*

JOSEPH LEON McCOMAS,

ADMINISTRATOR C. T. A. OF ELLEN VERNON, DECEASED.

*Wills: construction; revocation; intent of testator. Article 93, section 330, Code: effect not retroactive.*

Equity will look through the form of a transaction to what the transaction really is, and give effect to it, as the parties intended, irrespective of the form in which that was sought to be carried out.                                          pp. 381-382

But this principle can not be invoked when there is nothing in the bill of complaint, nor the agreed statement of facts, tending to establish an intent of the parties to do anything other than what they in fact did.                          p. 382

The provisions of Chapter 249 of the Act of 1888 (Code, Article 93, section 330), to the effect that every devise and bequest purporting to be of all the real estate and personal estate belonging to the testator shall be construed to include all the property over which he has a general power of appointment, unless a contrary intention appear in the will or codicil containing such devise or bequest, has no application to wills executed prior to the passage of that Act.                          p. 382

Besides the provisions in the Code (section 324 of Article 93), for the revocation of wills, wills may be revoked by implication by an alteration of the estate of the testator, between the execution of the will and the time it goes into effect.

pp. 382-383

*Decided June 23rd, 1915.*

Appeal from the Orphans' Court of Baltimore City.

The facts are fully stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Frederick V. Reinheimer* submitted a brief for the appellants.

*David Ash* submitted a brief for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This appeal was taken from an order of the Orphans' Court of Baltimore City overruling exceptions by a purchaser to the ratification of a sale of leasehold property which purported to have been made by Joseph L. McComas, as administrator *c. t. a.* of Ellen Vernon. The exceptions set forth two grounds of objection to the title: (1st) Because said Ellen Vernon at the time of her death had no title to the leasehold estate or any interest whatever in said property; (2nd) Because the said administrator had no interest whatever in said property.

The somewhat complicated condition of the title to the property involved will be best understood by a summary ·in chronological order of the several instruments which affected it, or were supposed to do so.

In 1875 Ellen Vernon was seized in fee simple of a lot of ground on South Ann street, and by a will dated June 15th, in that year, devised the property in the following terms:

"I give and bequeath my house and furniture No. 133 South Ann street, together with the lot on which said house stands, to my daughter Mary Ellen Vernon, to be possessed by her during the term of her natural life, and after her death said house, lot and furniture to go to my daughters, Margaret O'Brien and Susan Vernon, to be equally divided between them."

On November 12th, 1875, or about five months after executing the will already mentioned, Mrs. Ellen Vernon executed a deed of trust to her daughter, Mary Ellen Vernon, by which she granted the said fee simple property and certain household goods and chattels and all choses in action in her possession. The trust was expressed in the following language:

"That the said Ellen Vernon shall have the uses, benefit, income, rents and profits in, into, of and out of said property during her natural life, with full power and authority to the said Ellen Vernon during her natural life to sell, mortgage, assign and transfer all or any of said property as fully, lawfully and completely as if this deed had never been made, and to dispose thereof, if the said Ellen Vernon shall so choose, by last will and testament; and upon the death of the said Ellen Vernon without having disposed of said property then said property, or so much thereof as may remain undisposed of, shall go to the said Mary Ellen Vernon for and during the term of her natural life, free, clear and discharged from the control of any husband of the said Mary Ellen Vernon, with full power and authority to her to sell, mortgage, assign or otherwise dispose of the same by deed or will without the consent and approbation of any husband the said Mary Ellen Vernon may have, and as fully, freely and lawfully as if she were a *feme sole.*

And if the said Mary Ellen Vernon shall die without having disposed of said property, then the said property or so much thereof as shall remain undisposed of shall go to Margaret O'Brien and Susan Vernon, the two sisters of the said Mary Ellen Vernon, as tenants in common, to be held by them share and share alike, free from the power and control of any husband or husbands of each and both of said tenants in common, with power to them to dispose of said property without the consent or approbation of the husband or husbands of each or either of them, as fully as if said tenants in common were *femes sole*."

It is to be observed that there is this point of difference between the disposition of the property as made by the will previously executed and that made by the deed. By the will Mary Ellen was given a life estate only, with remainder over to her two sisters; by the deed she was given a life estate with power of disposition by sale, mortgage or otherwise, and only so much of the property was to go to Margaret and Susan as should remain undisposed of by Mary Ellen at the time of her death.

The deed of trust contained the reserved powers in the settlor already set forth in the trust clause, to be exercised by sale, mortgage, assignment or transfer of the property, or disposition of the same by will.

The first question thus presented is as to the effect on the title resulting from the will executed in May, followed by the deed of trust of November, and this will be considered hereafter.

In 1877, Ellen Vernon executed a deed in fee of the Ann street property to William H. and Lydia J. Williams, as joint tenants, and at the same time took a lease back from them of the lot at an annual rental of $30, in the usual form then prevailing for ninety-nine-year leases.

Ten years later, after the death of Ellen Vernon, Mrs. Williams (whose husband had died in the meantime) con-

veyed the reversion in fee and the ground rent of $30 to Mary Ellen Vernon. This conveyance was not made to her as trustee, but to her individually.      •

In 1896 Mary Ellen Vernon mortgaged to Gebhard Leimbach "all her right, title, interest and estate at law and in equity" in and to the South Ann street lot.

So matters rested until July, 1910, when Mary Ellen Vernon, as trustee and individually, conveyed the property to her sister Susan, then Mrs. McComas, her other sister Margaret being then dead. This deed purported to grant the lot in fee.

In May, 1914, the mortgage to Leimbach being in default, a decree was passed for the sale of the property, and it was advertised and sold, as being in fee simple, and the sale reported to the Circuit Court.

To this sale exceptions were filed, on the ground that the mortgagee had and could mortgage only a reversion and ground rent of $30. These exceptions have never been disposed of.

In October, 1914, the will of Ellen Vernon executed in 1875 was offered for and admitted to probate (she having died in 1878), and a few weeks later letters of administration *c. t. a.* were granted to the appellee. An inventory of this property was returned, an order passed for its sale, and to the sale made under this order exceptions were filed, the ruling of the Orphans' Court on which gave the basis for this appeal.

As the result of these various instruments with reference to the title several questions are raised. It is urged on behalf of the appellant that the deed to Williams and the lease back having been taken simultaneously, that the effect of these instruments was not that which the face of the instruments themselves would import, but that it amounted to a mortgage for $500, and occasioned no real change in the title to the property. The basis of this contention is the doctrine that equity will look through the form of a transaction to what the transaction really is, and give effect to it

as the parties intended, irrespective of the form in which
that intent was sought to be carried out. This doctrine is
too firmly established and has been too often recognized in
the courts of this State to require any citation of authori-
ties in its support. The objection to its application in the
present case lies in this, that the principle is one which is
applied to give effect to the real intent of the parties with
respect to a series of instruments simultaneously executed,
while in the present case neither in the bill nor agreed state-
ment of facts is there anything sufficiently tending to estab-
lish an intent of the parties to do anything other than they in
fact did. At the time when the deed and the lease were
made it was entirely possible, under the law as it then stood,
to create an irredeemable ground rent upon land, and to do
that the necessary transmutations of title were exactly those
which took place in the present case. Moreover, for ten
years after the execution of the lease the ground rent was
owned by Mr. or Mrs. Williams, and a leasehold interest
only existed in Ellen Vernon. That was all of which she
was possessed at the time of her death.

The contention was made in the brief that the will was
an exercise of the testamentary powers of disposition re-
served in and by the deed of trust, and the Act of 1888 (Ch.
249), Code, Art. 93, sec. 330, was relied upon as establish-
ing this proposition. That Act, however, has no application
to the present case. The will and deed of trust were exe-
cuted and the death of Ellen Vernon occurred prior to the
passage of that Act, and in such a case it has been held sev-
eral times by this Court that the Act cited could in no way
apply; *Balls* v. *Dampman,* 69 Md. 390; *Cooper* v. *Haines,*
70 Md. 283; *Thom* v. *Thom,* 101 Md. 444.

This leads to a consideration of the effect of the deed of
trust. In Article 93, section 324 of the Code, provision is
made how a will may be revoked, and the language there
employed is very broad. But in addition to the modes there
enumerated, there may also be an implied revocation, as it is
termed, resulting from an alteration of the estate of the

testator between the time when the will is executed and when it goes into effect. A revocation of this character is in the nature of an ademption of a legacy or legacies contained in a will; it may apply to a single clause only, or a case may be presented where it applies to the entire estate of a testator; it may operate upon the estate of the testator as it existed at the time of the making of the will, and not operate upon it as it was at the time of the testator's death, where there has been such alteration, even though some or a portion of the property originally devised by the testator may be then held by him by an altered estate therein. It was said by CHANCELLOR KENT (4 *Kent,* 528-9) that: "Any alteration of the estate or interest of the testator in lands devised, by the act of the testator, is held to be an implied revocation of the devise"; and *Jarman* lays down the rule, that when the whole estate is altered, though the effect of it is to revest the property in the testator himself—this momentary interruption of the testator's seizin produces a complete revocation of the previous devise; 1 *Jarman on Wills,* 129. As an example of this rule, the learned author gives this: A. conveys a farm, which he had devised in fee, to the use of himself for life, remainder to the use of his own right heirs; the devise is revoked. And the rule laid down by these eminent text-writers has had at least the implied sanction of this Court in *Eschbach* v. *Collins,* 61 Md. 478; *Home of the Aged* v. *Bantz,* 107 Md. 543; *Safe Dep. & Tr. Co.* v. *Thom,* 117 Md. 154. At the time when Mrs. Vernon executed her will she owned the property, now involved, in fee. By the deed of trust she transferred the legal title of it, and thereby worked an implied revocation of the will which she had previously executed. Her estate in the lot was altered. She further, in conformity with the power reserved in the deed of trust, executed the deed to Mr. and Mrs. Williams, and received from them a grant of the leasehold estate, which was an interest or estate different from that conveyed by her to her trustee, acquired subsequent to the grant to the trustee. and, therefore, it was an estate or interest upon which her will

would operate, since a will speaks as of the date of the death of the testator, and operates upon his property as then situated unless a contrary intention plainly appears; *Frick* v. *Frick,* 82 Md. 218; *Levi* v. *Bergman,* 94 Md. 204. There are cases where an intent on the part of the testator is clearly apparent, and yet by reason of subsequent dealing with the property it has been changed in form, in which the courts have used their powers to the utmost to give effect to the intention of the testator. The case of *Joynes* v. *Hamilton,* 98 Md. 685, was a case of this character, and in that this Court found unmistakable evidence, in the form of a check and letter, to show that it was not the intent of the testator that his sale of the property, subsequent to the execution of the will, should in any manner affect the distribution of his estate between his children.

In the present case, however, there is nothing to show any intent on the part of Mrs. Vernon that the effect of what she did with this property should be different in any respect from the ordinary and usual consequences of her act.

From these considerations the following results must inevitably flow: That at the time of Mrs. Vernon's death, in 1878, she was possessed of a leasehold estate on South Ann street, the title to which would by operation of law devolve upon her personal representatives, to pass, upon the administration of her estate, in accordance with the terms of her will; that Mary Ellen Vernon, who had acquired by the deed from Mrs. Williams the reversion in fee and ground rent as an individual, had that, and that only, which she could make subject to the mortgage to Leimbach, or transfer by deed to Mrs. McComas; and that as the result of the deed from Mrs. Vernon to Mr. and Mrs. Williams, there was nothing remaining in the trust estate, of which Mary Ellen Vernon was trustee, for the deed of November, 1875, to operate upon.

The order of the Orphans' Court of Baltimore City overruling the exceptions and ratifying the sale will, therefore, be affirmed.

> *Order affirmed, costs to be paid out of the estate.*