MARY W. CRAIG ET AL.

*vs.*

NARCISSA B. CRAIG.

*Property of Decedent—Contract Before Administration—*
*Rights of Legatees—Conflict of Laws—Distribu-*
*tion of Leaseholds.*

Even before administration, the legatees under the will of
property not required for the payment of debts, had an incho-
ate title thereto, and could execute a valid and effective con-
tract for the sale thereof, administration, when obtained, relat-
ing back to the contract, and the administrator being bound to
recognize the vendee's rights under the contract, and to report
the sale.                                              pp. 326, 327

Leasehold property situated in Maryland, belonging to a
decedent domiciled in Pennsylvania, is, as personal property,
to be distributed under the laws of Pennsylvania.  pp. 328, 329

A widow's renunciation and election to take as against the
will is equivalent to her death, for the purpose of the accelera-
tino of remainders, unless this contravenes some manifest in-
tention of the testator as expressed by the will.           p. 329

*Decided January 25th, 1922.*

Appeal from the Circuit Court of Baltimore City (STUMP,
J.).

Bill by Thomas Hughes, Administrator with the will an-
nexed of George E. Craig, deceased, against Mary W. Craig,
Narcissa B. Craig and others.  From a decree in favor of
said Narcissa B. Craig, the other defendants appeal.  Af-
firmed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and
OFFUTT, JJ.

*Edward Duffy,* with whom was *W. J. Zacharias* on the brief, for the appellants.

*Forrest Bramble,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

George E. Craig, a resident of Chambersburg, Franklin County, Pennsylvania, died in the month of September, 1918, after having first made his last will and testament, by which he devised and bequeathed unto his wife, Narcissa Brewster Craig, the income of his estate, both real and personal, during her life or widowhood, and, upon her death or marriage, his estate was to go to his three sisters, Mary W. Craig, Carrie M. Craig and Arianna Craig Jones, subject, however, to the provision therein contained that "at the death of either of my sisters, their share to go to my nephew, Meredith C. Jones, and niece, Aria N. Jones." His nephew, Meredith C. Jones, was appointed his executor, and he thereafter qualified as such executor in the State of Pennsylvania.

His widow, Narcissa B. Craig, renounced the will and elected to take the part of the testator's estate to which she would have been entitled had he died intestate.

It appears from the record that, at the time of his death, the testator was the owner of a leasehold interest in a house and lot of land in Govans, Maryland.

Those entitled thereto under the will of George E. Craig, deceased, including his widow, Narcissa B. Craig, all of whom were adults, determined to sell the said leasehold property in Maryland, and so placed it in the hands of Caughy, Hearn and Company, real estate brokers of Baltimore City, for sale, and it was by them sold to Narcissa B. Craig for the sum of $4,500. To consummate the sale, the executor and the sisters, nephew, and niece of the testator, on the 17th day of October, 1919, entered into a written agreement with Narcissa B. Craig, the widow, by which they sold unto her the property, at and for the sum mentioned, of which $100 was paid in cash, and the balance was to be paid

within thirty days thereafter, and upon its payment, the vendors were to convey unto the vendee a merchantable title to the property.

It was afterwards discovered, however, by the parties to the agreement, that it was necessary, in order to pass title to said property, that letters of administration should be taken out in this state, and letters of administration were thereafter issued out of the Orphans' Court of Baltimore City to Thomas Hughes, as administrator in Maryland of George E. Craig, deceased.

After his appointment and qualification, Mr. Hughes proceeded to confirm the action of the parties in the sale of the said leasehold property, and complete the title to the property sought to be conveyed by said parties to the widow, by a sale from him, as administrator, to her, the vendee named in said agreement; and on the 14th of May, he obtained from the Orphans' Court of Baltimore City an order authorizing and empowering him as administrator to sell the said leasehold property, at public or private sale, upon the condition, however, if sold at private sale, it should not be for less than the appraised value. Its value at that time had been appraised at the sum of $4,500.

At this juncture in the proceedings, Mr. Hughes learned that the Title Guaranty and Trust Company was examining the title to said property, and when he called upon the officers of that company, he learned from them that Mrs. Craig had, shortly after she purchased the property, sold it to one James P. Dougherty, at and for the sum of $5,600. Upon obtaining this information he was uncertain as to what he should do. A sale of the property was then pending, awaiting confirmation, at $5,600, and he did not feel that he should sell it under the order of the court for the sum of $4,500, and so he wrote Mr. Zacharias, counsel for the executor in Pennsylvania, as well as for all the devisees under the will of George E. Craig, deceased, except Narcissa B. Craig, telling him of what he had learned in relation to the sale to Dougherty. In reply to this letter, Mr. Zacharias told him

that his people would decline to stand by the contract, and
Mr. Bowers, counsel for Narcissa B. Craig, informed him
that he would insist upon the fulfilment of the contract.

In this condition of affairs, Mr. Hughes filed his bill of
complaint in the Circuit Court for Baltimore City, setting
forth the facts that we have stated and others, asking therein,
first, that the court undertake the further administration of
the estate in his hands; second, that it pass upon the rights
and obligations of the parties to the contract of sale of the
17th of October, 1919, so far as it affects his obligations with
reference thereto; third, that it pass upon the rights and
obligations of James P. Dougherty, under his contract with
Narcissa B. Craig, to the extent, if any, that he must recog-
nize the contractual relations between them; and fourth, for
general relief. To this bill the executor and all of the devi-
sees of George E. Craig, including his widow, Narcissa B.
Craig, and Dougherty, were made parties defendant.

Answers were filed by each and all of the defendants, and
the court, after hearing the evidence in the case, passed the
following decree:

"It is thereupon this 1st day of July, in the year
nineteen hundred and twenty-one, by the Circuit Court
of Baltimore City, adjudged, ordered and decreed that
the renunciation by the widow of the testator having
been assented to as effective by all parties, therefore
the estates in remainder under said will are acceler-
ated so as to become effective by reason of said elec-
tion of the widow to renounce the will, and said
remainders therefore do not await the decease of the
widow for their vesting. It is further adjudged, or-
dered and decreed that the said administrator report
to the Orphans' Court of Baltimore City a sale to
Narcissa B. Craig, the widow of the testator, for
forty-five hundred dollars, pursuant to the contract
of October 17th, 1919, mentioned in the bill, and said
administrator proceed to make distribution in said Or-
phans' Court of Baltimore City, under its direction.
It is further adjudged, ordered and decreed that the

costs of this proceeding be paid out of the estate.
And in said distribution the widow shall receive one-
half in accordance with the Pennsylvania law as shown
by the testimony."

It is from the above decree that the appeal in this case is
taken. It is contended by the appellants that, in the disposi-
tion of the property to be made by Mr. Hughes, the admin-
istrator, no effect should be given to the contract of sale of
October 17th, 1919, but that it should be treated as a nullity.
In this contention we cannot agree with the appellants.

Those who made the contract were the persons who were
entitled, after the payment of the decedent's indebtedness
and the costs of the administration of his estate, to the pro-
ceeds of the property when sold. They were in a sense its
equitable owners, and all being adults, they were capable of
making a valid contract.

It is true that a complete title cannot pass to the vendee
without administration, but it does not follow from that fact
that the contract of sale so made is without force and effect.

In 11 *R. C. L.,* par. 274, it is said: "Since it was a rule
of the common law that the title to all the personal property
of the decedent was in the executor or administrator, it early
became established that the assent of the personal represen-
tative was essential to the passing of a complete title of a
specific legacy to one named in the will as devisee. It has
been said that the assent of the executor to the delivery of
the legacy is necessary for his protection against creditors of
his testator, and against insufficiency of assets to pay all
legacies in full. * * * And neither legatees nor distributees
have a right of property in the goods and chattels of the dece-
dent until the assent of the personal representatives is given.
Until then they have only an *inchoate* right in the surplus
after payment of debts, * * * the property remaining in the
representative. * * * On the giving of assent to the legacy
the title passes to the legatees, but the assent creates no new
title. It merely perfects the title acquired under that will."

In *Cecil, Admr.* v. *Negro Rose,* 17 Md. 92, Samuel Owens,
the testator, died in 1821, leaving a will, bequeathing a negro
girl, Rose, to his wife, Mercy Owens, whom he appointed his
executrix.  The wife died in 1831, leaving a will, by which
she bequeathed the same negro to her daughter, *to serve for
seven years and then to be free.*  No administration was
granted upon the estate of the testator or testatrix till 1857,
when letters thereon were granted to the appellant, who took
possession of Rose and her children, who had been going at
large and acting as free since 1838.  In 1860, Rose and her
children, born after the expiration of the said term of seven
years, filed their petition for freedom against the appellant.
The Court there said Mercy Owens, as legatee, "had a right
to negro Rose, which vested upon the death of the testator;
her title was derived from the will, and although, to perfect
it, an administration was necessary, yet, before administra-
tion, she had an *inchoate* title, which it was competent for
her to assign or dispose of by her will.  When administration
is afterwards had upon the estate, her title or the title of
those claiming under her, becomes complete; it relates back
to the time of the testator's death."

In *Phila. & R. Coal, etc., Co.* v. *Willinger,* 137 Md. 52, a
collateral assignment of certain stocks of the decedent was
made by those entitled to them, or to the proceeds from a sale
of them, before any administration was had upon the estate
of the decedent.  This Court there said, speaking through
JUDGE BRISCOE:  "The debts of the decedent had been fully
paid out of the assets of the estate, or as provided by the
audit, and the assignors of the stock, being the equitable
owners, had a right to assign it as collateral security for
the loan."

The evidence in this case is that the property of the dece-
dent in Pennsylvania was sufficient to pay his debts, and no
part of the assets in Maryland was required to pay the same.
This gave to the distributees of the estate, those who made
the contract, an *inchoate* right in the proceeds of the sale of
the property; and upon the issuance of letters of administra-

tion in this State, it was the duty of the administrator, as such, to recognize and respect the rights of the vendee acquired under the contract, and to report a sale made to her of said property, in order that the title, which under the contract was to pass to the purchaser, could thereby be completed.

But it is further contended by the appellants that although leasehold property is regarded by the Maryland law as personal property, whether it belongs to a resident or non-resident, yet when it comes to deciding whether it "is governed by the distribution law of Maryland, or of Pennsylvania, the Court will look solely at its quality as realty, its quality of immobility, and will hold that being immobile, it is subject alone to the sovereignty of Maryland and that this sovereignty will not be yielded."

In *Allender* v. *Sussan,* 33 Md. 11, this Court, in speaking of the character of leasehold estate, said:

"For certain purposes under our laws a leasehold interest like the present under a lease for ninety-nine years, renewable forever, may have impressed upon it some of the qualities of real estate, but * * * it is still an estate less than a freehold; it does not descend *to the heir* but is assets in the hands of the executor or administrator to be administered and distributed by him as other personal property, under the authority of the orphans' court." *Williams* v. *Holmes,* 9 Md. 281; *Culbreth* v. *Smith,* 69 Md. 454; *Devecmon* v. *Devecmon,* 43 Md. 335; and in *Noonan* v. *Kemp,* 34 Md. 73, this Court quoting from Lord Loughborough, said:

" 'It is a clear proposition,' says Lord Loughborough, 'not only of the law of England, but of every country in the world, where the law has the least semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no *visible* locality; but that it is subject to that law which governs the person of the owner; both with respect to the disposition of it, and with respect to the transmission of it, either by succession or by the act of the party. It follows the law of the person. If he dies, it

is not the law of the country in which the property is, but the law of the country of which he was a subject, that will regulate the succession.' 'And this doctrine has been constantly maintained, both in England and America, with unbroken confidence.' " *Story's Conflict of Laws,* sec. 380.

Under the authorities stated the court was undoubtedly right in holding that the distribution of the proceeds of the leasehold property should be under the laws of Pennsylvania, in which state the decedent had his domicile at the time of his death. There was also no error in the court's holding that the renunciation of the widow accelerated the vesting of possession of the remainders and that such vesting of the same did not await her death.

As stated in *Randall* v. *Randall,* 85 Md. 439:

"The rule followed by both the English and American courts is, that a widow's renunciation and election to take as against the will is equivalent to her death, unless it contravenes some manifest intention of the testator as expressed by the will."

In this case there is no expression of the testator found in the will manifesting such intention. *Davis* v. *Hilliard,* 129 Md. 348. The decree of the court below will therefore be affirmed.

*Decree affirmed, with costs.*