JARVIS S. ROGERS *et al.,* Appellants, v. FRANK GAGE *et al.,* Respondents.

Kansas City Court of Appeals, November 5, 1894.

1. Chattel Mortgages: INCREASE. As a general rule, a mortgage of a domestic female animal will cover the increase from such animal.

2. Record: POSSESSION: NOTICE. If a mortgagee is not in possession, while the record of his mortgage may operate as a substitute for possession, it is, however, only such substitute on the question of notice, and the mortgage must show what property is mortgaged.

3. ———: ———: INCREASE: RECORD : NOTICE. Where a mortgage of stock says nothing of the increase, a subsequent mortgage covering the increase of the animals described in the prior one will hold such increase as against the prior mortgagee, especially when the animals in the subsequent mortgage have passed beyond the period of nurture. Cases relating to the mortgage of female slaves are distinguished.

4. Appellate Practice : OBJECTIONS. The appellate court will confine itself to the objections which have been made to the trial court.

5. Chattel Mortgage : PARTNERSHIP. One member of a partnership has the authority to execute a chattel mortgage for the firm, and to acknowledge it before the proper officer.

*Appeal from the Clinton Circuit Court.*—HON. W. S. HERNDON, Judge.

AFFIRMED.

*Crosby Johnson* and *E. J. Smith* for appellants.

(1) A certificate of acknowledgment which recites that "Berkley & Bro." appeared and acknowledged the instrument, without further specification of the party who acknowledged it, is fatally defective. *Hughes v. Morris*, 110 Mo. 306; *Sloan v. Machine Co.*, 70 Mo. 206. (2) J. N. Berkley was not authorized to execute mortgages in the firm name. To execute sealed instruments, the partner must have express authority. *Gwinn v. Rooker*, 24 Mo. App. 290; *Henry County v. Gates*, 26 Mo. 315; Parsons on Partnership, 178. (3) The mortgage description must segregate the cattle to be mortgaged from others belonging to the mortgagor which answer the same description. *Stonebraker v. Ford*, 81 Mo. 532; Jones on Chat. Mort., sec. 56. (4) In absence of conventional arrangement changing the general rule, the owner of the dam is the owner of her offspring. *Stewart v. Ball*, 33 Mo. 154; *White v. Storms*, 21 Mo. App. 288; *Lewis v. Davis*, 3 Mo. 154. (5) The mortgagee, after default in the conditions of

the mortgage, becomes absolute owner of the mortgaged property. *Robertson v. Campbell*, 8 Mo. 365, 615; *Barnett v. Timberlake*, 57 Mo. 499; *State v. Adams*, 76 Mo. 605. (6) A chattel mortgage, properly recorded, is equivalent to a change of possession. *Feurt v. Rowell*, 62 Mo. 524; *Hellman v. Pollock*, 47 Mo. App. 205; *Edmonston v. Wilson*, 49 Mo. App. 492. (7) The mortgagee is owner of all increase of mortgaged property born after default in the mortgage or which was part of the mortgaged property at the time the mortgage was given. *Edmonston v. Wilson*, 49 Mo. App. 492; *McCarty v. Blevins*, 5 Yerger, 195; *Hughes v. Graves*, 1 Litt. (Ky.) 317; *Forman v. Proctor*, 9 B. Mon. 124; *Fowler v. Merrill*, 11 How. (U. S.) 375; *Evans v. Merriken*, 8 Gill & J. 39; *Cahoon v. Miers*, 11 Atl. Rep. (Md.) 278; *Meyer v. Cook*, 5 S. Rep. (Ala.) 147; *Gundy v. Biteler*, 5 Bradw. (Ill.) 510; *Pyeatt v. Powell*, 51 Fed. Rep. 551; *Cattle Co. v. Mann*, 130 U. S. 70, 78.

*Thos. E. Turney* and *Wm. Henry* for respondents.

(1) Plaintiff's mortgages are silent as to increase, and they can, at the utmost, cover only increase at the dam's foot. *Funk v. Paul*, 54 Am. Rep. 576 (64 Wis. 35); *Darling v. Wilson*, 49 Am. Rep. 305 (60 N. H. 59); Jones on Chat. Mort. [2 Ed.], secs. 55 and 149. In this case it is claimed that the '85 and '87 mortgages shall cover increase from two to five years old; and even the owner and breeder could not tell whether the animals are calves of animals mortgaged or calves of calves of such animals. *Edmonston v. Wilson*, 49 Mo. App. 492. (2) The pretended delivery by the Berkleys to appellants, September 8, 1891, is ineffectual for any purpose as against respondents. Jones on Chat. Mort., sections and pages 181, 182 and 184. (3)

One partner has the right to mortgage or pledge the personal property of the firm for partnership purposes. *Keck v. Fisher*, 58 Mo. 532; *Holt v. Simmons*, 16 Mo. App. 97–114; *Clark v. Rives*, 33 Mo. 579–582.

ELLISON, J.—This is an action of replevin, the principal question being which of two mortgagees has the superior right to the live stock in controversy. Defendants having obtained possession of the stock, plaintiffs instituted this action.   It was referred, by the circuit court, to J. W. Alexander, Esq., as referee, whose finding and report was in favor of defendants, and which report was confirmed by the circuit court.

Plaintiffs introduced in evidence three chattel mortgages made by J. N. & W. H. Berkley, dated, respectively, November 11, 1885, January 8, 1887, and February 17, 1891.   Defendants introduced in evidence five chattel mortgages, made by same parties, dated, respectively, August 18, 1890, November 28, 1890, September 22, 1890, April 16, 1891, and April 18, 1891.   The report of the referee contained the following findings:

"1. That no part of the stock in controversy in this case is the same stock mortgaged by J. N. and W. H. Berkley to plaintiffs by the chattel mortgages offered in evidence by plaintiffs and dated November 11, 1885, and described in the petition, except the following:   One aged red cow, one aged red roan cow, one dark bay or brown mare eight or nine years old.

"2. That none of the stock in consideration in this cause, and described in plaintiff's petition, is the same stock mortgaged to plaintiffs by said J. N. and W. H. Berkley by the chattel mortgage offered in evidence by plaintiffs, dated January 8, 1887, unless it be that last above described.

"3. That the testimony tends to prove that the stock in controversy, except said three head above described, are the offspring of the cows and mares mortgaged to plaintiffs by said mortgages of November 11, 1885, and January 8, 1887, and their descendants.

"4. The description of the earmarks of the steers and heifers in defendant's mortgage of August 18, 1890, is correct.

"5. That none of the stock in controversy is the same described in plaintiffs' mortgage of February 13, 1891, from J. N. and W. H. Berkley.

"I, therefore, find that the one aged red cow, and the one aged red roan cow, and the dark bay or brown mare are the property of plaintiffs, and that plaintiffs are entitled to one cent damages for the taking and detention of the same. I further find that the stock in controversy, except the three head aforesaid, are the same described in the mortgage of August 18, 1890, by J. N. and W. H. Berkley to J. E. Bohart, cashier, and in the mortgage acknowledged April 18, 1891, by W. H. Berkley to C. J. Stevens, cashier of defendant bank, except the two mules in controversy; and that said J. N. and W. H. Berkley, on October 14, 1891, were in possession of said stock, including said mules, and delivered the same to defendants, Coberly and Gage, as the agents of the defendant bank; and that said defendants, Coberly and Gage, were in possession of said stock and mules as such agents on October 22, 1891, when said stock was replevined by the plaintiffs."

In our opinion the evidence is quite sufficient to sustain the finding of the referee and we shall address ourselves to the main question, which is involved in the third finding. We have heretofore held, in an opinion by SMITH, P. J., that where a mare was described by the mortgage to be in foal, her colt when

foaled would be subject to the lien of the mortgage and would continue to be while being nurtured by the mare. *Edmonston v. Wilson*, 49 Mo. App. 491. But in the present case the mortgages cover a large number of mixed animals and there is no provision in either of them as to the increase of the females. In addition to this there is the important feature here that the increase upon which defendants' mortgages were taken are not colts or calves in course of gestation at date of mortgage, or running with and being nurtured by their mothers, but such increase consists of animals several years old and many of which have themselves had increase, all sought to be covered by plaintiffs' mortgage on the original stock. In considering the question we have conceded to plaintiffs that their mortgage debts had become due before the mortgages under which defendants claim, were executed and thus give to plaintiffs whatever there may be in the claim (as respects a case of this nature) that a mortgagee after condition broken becomes the legal owner of the property mortgaged. But after default, the mortgagor still being in possession, the record is only notice in the respect that it was before. Our conclusion in the case is that the referee gave a proper interpretation to the law applicable to the mortgages of female live stock and that his report was properly adopted by the trial court.

The general rule undoubtedly is, that a mortgage of a domestic female animal will cover the increase from such animal. There is no dissent from this proposition. But in applying it to the varied cases which have arisen between contending mortgagees, or between mortgagee and creditor, there have been conflicting views advanced; when a mortgagee is not in possession the record of his mortgage is said to operate as a substitute for possession, and so it is generally regarded

and enforced. It is, however, a substitute for possession on the question of notice. The mortgage must show what property is mortgaged. If the property in dispute is not mentioned in the mortgage and nothing is therein contained to indicate that it is covered by the mortgage, there ought not to be any question that such property would not be regarded as affected by the mortgage in so far as the rights of anyone are concerned who had only the mortgage to warn him of antagonistic claims. In the case before us, as before stated, the mortgage says nothing of increase of the animals; and though the animals claimed by defendants under the subsequent mortgages are, in fact, the increase of the animals described in plaintiffs' prior mortgages, yet there is nothing in the prior mortgages to so indicate. And we therefore hold that under such a mortgage, when the increase of the animals therein conveyed have passed beyond the period of nurture (so that the very character and situation of the property itself would not be notice) the mortgage will not cover such increase as against a subsequent mortgagee of such increase. *Darling v. Wilson*, 60 N. H. 59; *Winter v. Landphere*, 42 Iowa, 471; *Meyers v. Cook*, 85 Ala. 417; *Funk v. Paul*, 64 Wis. 35; *Kellog v. Lovely*, 46 Mich. 131.

What was said by the supreme court of New Hampshire in *Darling v. Wilson, supra*, is peculiarly applicable to the facts of the case made by this record. That court said: "If the plaintiffs' view is correct, there is no limit to the amount of property that can be held upon a mortgage of live stock. If the mortgage covers the increase of the particular animals mortgaged, so that they can not be sold to an innocent purchaser or attached by an innocent creditor, it would, for the same reason, cover the increase of the increase to an indefinite period, and no person would be safe in pur-

chasing live animals of one who had at any time made a mortgage upon his live stock, without examining into the pedigree of the animal and ascertaining whether some of its ancestors were among those mortgaged, however great the inconvenience or expense in so doing. This is not the law."

This view we believe to be the most reasonable and above all the most practical. The consequences of the view urged by plaintiffs would lead to much inconvenience and be accompanied by unjust results to innocent purchasers of chattels. It is well to remark, before closing the case, that authorities concerning the mortgages of female slaves are frequently cited as sustaining the opposite opinion to that we here promulgate, but it is frequently not noted that in case of a female slave a rule founded upon principles of humanity arose which, of course, is not applicable to cases affecting animals. As to this, see *Garth v. Everett*, 16 Mo. 492, and *Herndon v. Herndon*, 27 Mo. 422.

The point is made here against admitting defendants' mortgage of September 22, 1890, on the ground that it is executed by "J. N. Berkley & Bro.," and was acknowledged "J. N. Berkley & Bro.," to be "his free act and deed." This objection was not made at the trial court. The objection at the trial court is stated in the record to be the same as was the objection to the other mortgages offered, and such objection was on the ground that J. N. Berkley had no authority to execute it in the firm name. It is a rule which has been frequently announced, that we will confine ourselves here to the objections which have been made to the trial court, and we need not, therefore, give any attention to the point as now made. We will, however, say, since it covers the objection as made, that one member of a partnership has the authority to execute a chattel

mortgage for the firm and to acknowledge it before the proper officer. *Leck v. Fisher*, 58 Mo. 532.

Other objections were made to evidence admitted in behalf of defendants tending to fix the animals described in the mortgage and those taken by defendants which we, on consideration, do not deem tenable. *Sparks v. Brown*, 46 Mo. App. 529. And so we think other rulings on the admission of evidence have not materially affected the rights of the parties and offer no sufficient ground for disturbing the result. What we have said in this opinion sufficiently disposes of all questions relating to the instructions. A consideration of the whole record satisfies us that the judgment should be affirmed, and it is so ordered. All concur.