**American Trust & Savings Bank, Appellant, v. Alice Gladu, Appellee.**

**Gen. No. 8,125.**

the October term, 1929. Heard in this court at Opinion filed May 22, 1930. Rehearing denied June 24, 1930.

HUNTER & MINOR, for appellant.

CHAS. D. HENRY, JR., for appellee.

MR. JUSTICE JONES delivered the opinion of the court.

This was a trial of the rights of property under the act providing for such proceedings (¶ 68 *et seq.*, chap. 77, Cahill's Rev. Stat.). On the trial it was stipulated that on April 9, 1929, Alice Gladu recovered a judgment for $1,107 against Homer Raymond and Desneige Raymond; that execution issued on the same day; that a levy was made by the sheriff in June, 1929, on 100 old chickens and 1,500 young chickens in the possession of Raymond; that the bank holds a note of Homer Raymond for $3,000, dated February 17, 1928, due in one year, secured by a chattel mortgage of even date, on certain chattels including 1,700 chickens, Leghorns and Buff Orpingtons, and also all increase in the chickens by purchase or hatching during the life of the mort-

gage; that the mortgage was properly acknowledged, recorded, and extended; that at the time of the trial there were 1,775 old chickens and 1,339 young chickens on the Raymond farm; and that the only question before the court is the question as to who is entitled to the 1,339 young chickens. It appears that on May 7, 1929, the maturity of the chattel mortgage was extended to January 1, 1930. The court found the issues for appellee and entered judgment accordingly and the bank perfected this appeal.

The uncontradicted testimony of Homer Raymond, the mortgagor, is to the effect that he had 1,339 young chickens on the farm at the time of the levy; that they were all raised that year from eggs laid on the farm by the same hens covered by the chattel mortgage, and were hatched in incubators; that he knew the chickens that laid the eggs were the same ones covered by the mortgage because they were the same hens that they had on the farm, and had been separated from the old hens in October 1928. It also appears that the chickens were hatched during the spring of 1929.

The point involved is whether or not the 1,339 young chickens are covered by the chattel mortgage. The question is not free from difficulty and is apparently without precedent on the precise question at issue. It seems to be the general rule that the offspring of all animals, as well as the growth and increase of property follows the ownership of the property itself. Hence, unless there is some agreement to the contrary, the increase of all domestic animals belongs to the owner of the dam. (*Hazelbaker v. Goodfellow,* 64 Ill. 238.) In *Gandy v. Biteler,* 6 Ill. App. 510, it is held that when livestock is mortgaged, its natural increase becomes subject to the mortgage, and in *Van Zele v. Cleaveland,* 208 Ill. App. 387, it is held that a mortgage covering certain livestock, without referring to the increase thereof, was sufficient to cover such increase.

At common law, a mortgage could operate only on property actually in existence at the time of giving the mortgage, and then actually belonging to the mortgagor, or potentially belonging to him as an incident of other property then in exisence and belonging to him. (*Borden v. Croak,* 131 Ill. 68.) Things not having an actual existence, but having a potential existence, or as it is sometimes said, things which are the natural product or increase of something already existing, and the property of the mortgagor, may be the subject of a valid mortgage. The principle underlying the cases which hold that a potential existence is sufficient is that the right to the property when it comes into actual existence is a present vested right. While the thing itself need not have identity or separate entity, yet it must at least be the product, growth, or increase of property which has at the time a corporal existence, and in which the mortgagor has a present interest and not a mere belief, hope, or expectation of a future acquired interest. (5 R. C. L. Chattel Mortgages, 405.)

Applying the rule that things which have neither an actual nor a potential existence are not the subject of mortgage, it has been held that a mortgage cannot cover the offspring of animals which were not conceived before the date of the mortgage, so as to affect the rights of third persons, although such a mortgage may be valid between the parties. (5 R. C. L. Chattel Mortgages, 408.) But the authorities quite generally sanction the rule that a mortgage on domestic animals covers the increase, even though it is silent with reference to it. By some courts the propriety of this rule is upheld on the ground that the increase which was in gestation at the execution of the mortgage was inferentially included therein, as a part of the mortgaged property, or by a reference to an analogous doctrine laid down by Judge Story that where a thing is

pledged, its natural increase as accessory is also pledged. Other decisions sustaining the general principle seemed to have originated in the doctrine that the mortgagee of chattels is the legal owner; so that in holding the young of mortgaged animals to be subject to the mortgage, the courts are only applying the general rule which assigns the increase to the owner of the mother. Where the doctrine is entertained that the mortgagee of chattels is vested with the title thereto, it does not seem to be necessary that the increase of animals be in gestation at the time of the execution of the chattel mortgage. In jurisdictions, however, where a chattel mortgage is regarded as only establishing a lien, and not transferring title, a mortgage of domestic animals does not cover the increase in gestation at the time of the execution of the mortgage, where there is no express mention thereof in the instrument itself; but such increase born before foreclosure may be dealt with by the mortgagor in possession as his own, and disposed of as he sees fit. *A fortiori,* in such jurisdictions a mortgage cannot be held to include increase begotten after the mortgage was executed. (1 R. C. L. Animals, 1071.)

In jurisdictions where a mortgage is only a lien and does not cover increase, the rule is applied only where there is no express mention of increase in the mortgage; but the lien covers the increase, whether or not in gestation when the mortgage so provides. In the case at bar, the mortgage expressly covers the increase.

Appellee insists that because the chickens were hatched in incubators, they are not the natural increase of the hens mortgaged. We do not regard this contention seriously. The hatching of fertile eggs by keeping them at the proper temperature for a certain length of time is a natural process, however the heat is applied. The chickens are the natural increase of the mortgaged hens. The mortgage by its terms included

the increase in chickens by hatching, and its record was notice to judgment creditors and all other persons of appellant's rights.

Because of the views we have expressed, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*