# MARCH, 1936.

THE JOHN DEERE PLOW CO., APPELLANT, v. HARRY GOOCH AND JOHN KURZ, RESPONDENTS.—91 S. W. (2d) 149.

St. Louis Court of Appeals. Opinion filed March 3, 1936.

*May & May* for appellant.

154

*J. D. Haley* and *Creech & Creech* for respondents.

McCULLEN, J.—This suit was brought by appellant, plaintiff below, against respondents, defendants below, for alleged conversion of livestock. It was tried before the court and a jury and resulted in a verdict for plaintiff. Each defendant filed a motion for a new trial and each motion was sustained by the trial court. From the order sustaining the motions for a new trial, plaintiff appeals.

Plaintiff's petition alleged that on or about December 19, 1932, it was the owner of nineteen spring calves, nine yearlings, sixty shoats and ten brood sows of a total reasonable value of $855; that on or about said date, while plaintiff was the owner of said property and had the right to immediate possession thereof, defendants, without leave of plaintiff, wrongfully took said property from Pike County, Missouri, and wrongfully and unlawfully converted it to their own use and disposed of the same, whereby plaintiff was damaged in the sum of $855, for which amount plaintiff prayed judgment.

The separate amended answer of defendant Harry Gooch contained a general denial of the allegations of plaintiff's petition, coupled with a specific denial of any indebtedness existing between said defendant and plaintiff and between defendant John Kurz and plaintiff on the date of the filing of the suit, and alleged that whatever indebtedness existed between plaintiff and defendant John Kurz was fully satisfied and paid by said defendant John Kurz by plaintiff converting to its own use a tractor plow and a tractor two row cultivator (John Deere make) on or about the ——— day of May, 1933, all of which was of the reasonable value of $1200, and that the value of said machinery so wrongfully converted fully satisfied any debt that might have existed between defendant John Kurz and plaintiff.

The separate answer of defendant John Kurz contained a general denial of the allegations in plaintiff's petition, after which said defendant alleged that whatever indebtedness existed between plaintiff and himself was evidenced by two promissory notes each in the sum of $456.33, dated April 22, 1931, and was fully paid and discharged by the plaintiff wrongfully and unlawfully converting to its own use on or about the ——— day of May, 1933, a John Deere tractor, a John Deere tractor two row cultivator, and a John Deere tractor plow, which said machinery, at the time of said conversion, was reasonably worth the sum of $1,000, and that said defendant "therefore offers to set off enough of the value of said machinery so wrongfully taken and converted by the plaintiff from this defendant as will equal the amount that this defendant owed the plaintiff at the time said machinery was so taken and converted to the use of plaintiff." Defendant Kurz prayed judgment that said set off be made against plaintiff's claim and that plaintiff's claim be adjudged satisfied as to said defendant.

For further defense and for a counterclaim, defendant Kurz al-

leged that the machinery mentioned was wrongfully taken from his possession by plaintiff, and that by reason of such wrongful taking and conversion by plaintiff, 'said defendant was deprived of the possession and the use of said machinery from the date of the taking thereof to the time of the trial of the cause, whereby he was damaged to the amount of $1,000, for which sum he prayed judgment against plaintiff.

The reply of plaintiff was a general denial.

At the conclusion of all the evidence, the court, of its own motion, instructed the jury to find for plaintiff on defendants' counterclaim, and the jury returned a verdict in accordance with said instruction. The cause was submitted by the court to the jury on instructions given on behalf of plaintiff and others given on behalf of defendants, and on the issues thus presented the jury returned a verdict in favor of plaintiff on plaintiff's cause of action in the sum of $556. The jury also found for plaintiff and against the defendants on the set-off pleaded by defendants.

Plaintiff assigns as error the action of the court in sustaining the defendants' motions for a new trial.

The evidence shows that on April 8, 1927, defendant Kurz executed a note, and a chattel mortgage securing same, to the Silex Motor Company of Silex, Missouri, for a loan of $2700 made to him through defendant Harry Gooch, who was then the manager and part owner of that company. Testifying with respect to this loan and the chattel mortgage securing it, defendant Kurz said:

"I secured it with what I had in the line of stock, machinery, everything I had. I gave them a mortgage on my machinery, my horses, cattle and stuff and the increase."

The chattel mortgage mentioned was introduced in evidence as defendants' Exhibit 1, but it is not set forth in the abstract of the record. In this connection the abstract shows merely that "Said defendants' Exhibit 1 is admitted and read in evidence and is in effect as above stated," referring to the above quoted testimony of defendant Kurz.

On April 22, 1931, defendant Kurz bought from the Hannibal Implement & Supply Company farm machinery consisting of a tractor with power take-off and power lift, a two row cultivator, and tractor plow. In payment of the purchase price thereof Kurz executed and delivered on that date to that company two promissory notes of $456.33 each, secured by a chattel mortgage on the farm machinery so purchased, each said note being a combination promissory note and chattel mortgage covering the farm machinery mentioned.

One of the chattel mortgage notes covering the farm machinery was payable on or before November 1, 1931, and the other was payable or or before September 1, 1932.

Shortly after the sale of the farm machinery to Kurz the two chattel mortgage notes were duly transferred to plaintiff by the Hannibal Implement & Supply Company. These chattel mortgage notes were introduced in evidence respectively as plaintiff's Exhibits 1 and 2.

On March 17, 1932, after defendant Kurz had defaulted in the payment of plaintiff's Exhibit 1, the first of the two notes above mentioned, he executed to the plaintiff company a chattel mortgage on eight one year old steer calves, three head of coming yearling heifers, and six calves from one week to three months old, seventeen head in all, as additional security for the payment of said notes. As further additional security thereon, defendant Kurz on May 24, 1932, executed to plaintiff another chattel mortgage, this one being on seven suckling calves, three unborn calves, and certain other personal property of said defendant not necessary to mention here because it is not involved herein. Later on defendant Kurz executed to plaintiff, as further additional security on said notes, still another chattel mortgage which was undated but was filed in the office of the County Recorder of Pike County on October 1, 1932. The last named chattel mortgage covered sixty-nine head of pigs ranging from two to four weeks old.

The three mortgages thus executed to plaintiff by defendant Kurz on the livestock mentioned were introduced in evidence respectively as plaintiff's Exhibits 3, 4 and 5. The chattel mortgage notes, Exhibits 1 and 2, given by defendant Kurz as security for the purchase price of the farm machinery, each contained provisions as follows:

"Should the maker hereof fail to pay this note when due, or any installment of principal or interest thereof when due, or should the purchaser remove or attempt to remove said property from his premises in this county, or should the purchaser sell or attempt to sell said property before the full payment of this note . . . then in any such event the owner or holder hereof may declare the entire principal of this note, with accrued interest, due and payable at once and the same shall thereafter be in default; and to enforce the liens securing the payment of this note the holder hereof may after default take possession of said property and sell the same with or without notice or advertisement, or upon such notice or advertisement as the holder hereof may elect, or such as may be required by statute or by law in foreclosure sales under chattel mortgages, and the proceeds of any such sale shall be applied, first, to all costs incident to the taking and selling of such property and the balance shall be applied to the indebtedness hereby secured, and at any such sale the holder hereof may purchase such property as if a stranger to this instrument."

It was not disputed that all the chattel mortgages mentioned, de-

fendants' Exhibit 1 as well as plaintiff's Exhibits 1 to 5, inclusive, were filed in the Recorder's Office of Pike County at the time they were respectively executed, or within a few days thereafter.

The evidence on the part of plaintiff, as well as that for defendants, showed that defendant Kurz had not paid plaintiff anything on the notes in question, and it was also shown by the evidence for all parties, without dispute, that defendant Gooch, through an arrangement which he made with defendant Kurz, took from defendant Kurz' place in Pike County in December, 1932, thirty-one cattle, sixty-seven shoats and ten brood sows, and hauled them to Troy in Lincoln County where, on January 6, 1933, he disposed of them at a private sale for the sum of $750. Defendant Gooch testified that he had no knowledge that plaintiff was claiming any right of possession or ownership of any of the livestock at that time. He also testified in this connection that he and defendant Kurz got together, figured up the amount the livestock brought, and that he, Gooch, credited Kurz for the full amount of $750 on Kurz' note of April 8, 1927, and drew up a new note for the balance owing on Kurz' old note and the balance of the interest due.

Defendant Kurz testified, at first over the objections and exceptions of plaintiff, but later, on cross-examination without objection and without any motion to strike out being made, that at the time he executed the chattel mortgages on the livestock as additional security to plaintiff in 1932, he told plaintiff's representative Baker that all of his livestock was covered by the chattel mortgage, referred to as the Gooch mortgage, which he had executed in 1927 to the Silex Motor Company. The chattel mortgage, Exhibit 3, which was the first one executed by Kurz to plaintiff as additional security, contained the following statement with respect to the livestock therein described: "Warranted free from all encumbrances and against all adverse claims." Exhibit 5, the last of the three chattel mortgages, executed by Kurz to plaintiff in 1932, contained a clause concerning the livestock mentioned therein as follows: "Owned entirely by John Kurz without any encumbrance whatever."

In plaintiff's Exhibit 4, which is the chattel mortgage from Kurz to plaintiff dated May 24, 1932, the following appears after the description of the property therein: "Calves are on the Bill Haley farm where I live, being all the property of the above description located at said place."

Defendant Kurz earnestly and repeatedly insisted throughout his testimony that he had told plaintiff's representative in connection with the execution of the chattel mortgages on the livestock by him to plaintiff, that all of his livestock was covered by the prior mortgage which he had executed to Gooch. Referring to the Gooch mortgage, he said:

"This stuff was subject to the first mortgage, the way I explained it, that the mortgage called for the stock and the increase and the only way I could give him a mortgage on it was subject to that first mortgage on it."

On cross-examination Kurz' attention was directed to plaintiff's Exhibit 3, the chattel mortgage on the livestock dated March 17, 1932, and he was asked if he had not signed it with the printed statement contained therein: "Warranted free from all encumbrances and against all adverse claims." He answered:

"Possibly I did, but however that ain't the contract I had with him. He might have put that in there afterwards. . . . He knew at the time I gave him this. I told him that there was a mortgage on this."

Plaintiff introduced in evidence the deposition of defendant Kurz and also the deposition of defendant Gooch. From these depositions, as well as from the testimony of the two defendants at the trial, it appears that with the exception of ten brood sows, seven shoats and three steers which belonged to Kurz' boy, and a few other exceptions, the livestock which was taken by Gooch from Kurz' farm in December, 1932, and sold in January, 1933 by Gooch, was the same livestock upon which defendant Kurz had given the three mortgages to plaintiff in 1932 as additional security for the payment of his notes on the farm machinery.

Counsel for plaintiff cross examined defendant Kurz at length with the evident purpose of showing that some of the livestock which Kurz permitted Gooch to take from Kurz' farm in December, 1932, and sell in January, 1933, were unborn at the time Kurz executed to Gooch's Silex Motor Company the chattel mortgage of April 8, 1927, and also for the purpose of showing that the livestock upon which Kurz gave the three mortgages to plaintiff in 1932, were too far removed in point of time to be covered by the mortgage which Kurz had given to Gooch on April 8, 1927. Concerning the livestock described in Exhibit 3, the chattel mortgage of March 17, 1932, given to plaintiff by Kurz, Kurz testified in part as follows:

"Q. I hand you plaintiff's Exhibit 3, which is the chattel mortgage executed on March 17, 1932, to the John Deere Plow Company, and ask you to tell the jury the circumstances of your giving that mortgage. A. Well, I gave him that mortgage subject to the first mortgage.

. . . . . .

"Q. And you told him you would give him this mortgage, didn't you? A. He asked for a mortgage and I told him I didn't have nothing I could give a mortgage on, that all my stuff was mortgaged to Gooch, and he asked me to give him a mortgage subject to the Gooch mortgage and for collateral on his note.

"Q. The Gooch mortgage was dated April 8, 1927, and that is the mortgage you refer to, isn't it? A. Yes, sir."

At this point in the cross-examination of defendant Kurz, counsel for plaintiff referred to plaintiff's Exhibit 3 and read therefrom a description of steers and calves and asked if they were covered by the Gooch mortgage, whereupon the following occurred:

"Q. Needn't mind stating what it stated, I know what it states; I ask you to answer the question, they were not covered by the Gooch mortgage? A. Yes, sir.

"Q. They were? A. Yes, sir; absolutely, the mortgage called for the increase.

"Q. Now, tell me where you got these eight one year old steer calves? A. Raised them out of my cows Gooch had a mortgage on.

. . . . . .

"Q. Didn't you tell me that these yearlings were out of cows that were the calves of the cows that Gooch had the mortgage on? A. Not all of them, no, sir.

"Q. Not all of them. How many of them? A. I don't remember; of course, I could figure them up, but not all of them; the biggest end of the cows was the cows Gooch had a mortgage on.

. . . . . .

"Q. Tell me how many there was? A. I don't remember what cattle they were, but they had to have been three year old heifers before they could have been calves out of them.

"Q. The mortgage was given five years ago, I mean five years before this plaintiff's Exhibit 3; these calves weren't here then? A. Yes—

"Q. You had a year to play on? A. I know there was some of them out of the stuff, but at that same—they were certain offsprings of the old cows—

"Q. They were grandchildren of the old cows, were they? A. Yes, sir; some of them."

Kurz was cross-examined further by counsel for plaintiff as to what he had told counsel sometime prior to the trial with respect to the identity of the livestock in question, and testified:

"Q. Then how do you tell the jury now they were covered by the Gooch mortgage and were the calves of those cows covered by the mortgage? A. Well, listen, I just figured that if I gave him a mortgage on the stock and naturally I aimed to be fair and square, and I just figured that as long as he had a mortgage on this stuff everything was covered under the mortgage until I got him paid; that's the way I figured."

After further cross-examination during which Kurz stated: "I didn't buy any of the cattle, I raised them," the following occurred:

"Q. None of them were the calves but all of them were the grand-

children— A. I said, I don't remember which ones, there was some calves, of course of the old cows', but don't remember how many of them were grandchildren or how many were direct children from them.''

Counsel for plaintiff then called the attention of Kurz to the statement in the mortgage that he (Kurz) warranted the property free from all encumbrances and against any adverse claim, and asked him about that statement. Kurz answered:

''I can't see it, I suppose it's there, but that wasn't what I told him. I told him positively that this stuff was subject to the first mortgage, the way I explained it, that the mortgage called for the stock and the increase and the only way I could give him a mortgage on it was subject to that first mortgage.

''Q. You signed it the way it is now, 'Warranted free from all incumbrances and against all adverse claims.' A. Possibly I did, but however, that ain't the contract I had with him, he might have put that in there afterwards.

''Q. Look at it and see if it isn't printed in there? You see that that's printed there, isn't it? A. He knew that at the time I gave him this, I told him that there was a mortgage on this.''

Kurz testified on further cross-examination that in December, 1932, Gooch took away eight one year old steer calves weighing around five hundred pounds, as described in plaintiff's Exhibit 3, three head of coming yearling heifers, six calves from one week old to three months old, described in said exhibit, and also took seven suckling calves, three steers and four heifers described in plaintiff's Exhibit 4.

With respect to the identity of the livestock taken by defendant Gooch to Lincoln County where it was sold by him, Gooch testified as follows:

''Q. Now, I will get you to point out on this chattel mortgage, marked defendants' Exhibit 1, dated the 8th of April, 1927, that livestock that I have just detailed the description of; I will ask you first with reference to the eight one-year old calves, weight around 500 pounds each. Point that out on your mortgage. A. I couldn't answer it accurately, Mr. May.

''Q. Can you point out any of it? A. No, sir; I couldn't specifically point out any of it.

. . . . . .

''Q. And there wasn't any of this property born at that time that you took in December, 1932, was there? A. No, sir; there wasn't any of it born at that time.

''Q. There wasn't any of it a year old at that time, at the time you took it? A. I would say not; the offsprings of the stuff was the property that we took.''

Further on in cross-examination defendant Gooch gave the following testimony:

"Q. What claim do you make to this property, what right do you claim to it? A. I thought we had an absolute right to it.

"Q. On what ground? A. We thought we had a mortgage on it.

"Q. Was that this mortgage, defendants' Exhibit 1? A. Yes, sir.

"Q. Will you point out in this defendants' Exhibit 1 the paragraph you claim you had a right to take this property under? A. We didn't take the property, Mr. May.

"Q. Well, you got the property? A. Yes, sir.

"Did you haul it off under your claim that the mortgage covered it? A. I didn't say anything about a claim under any mortgage; we simply asked for payment on our note and Mr. Kurz agreed to turn over to us certain livestock, the value of which to be applied on the note.

"Q. You say that property he turned over to you was covered by your mortgage, is that right? A. I suppose everything that he had was covered by this mortgage."

The evidence shows that the chattel mortgage which was executed by Kurz to Gooch on April 8, 1927, was recorded in the office of the Recorder of Pike County on April 12, 1927. This mortgage is not set out in the abstract of the record filed by plaintiff, appellant herein. The only reference to that chattel mortgage appearing in the record is shown in connection with the testimony of defendant Kurz wherein he said:

"When the Bank of Frankford went into the hands of the receiver or was taken over by the State, I had to settle up a note there and Harry Gooch or the Silex Motor Company loaned me the money to pay off this bank note with. *I secured it with what I had in the line of stock, machinery, everything I had, I gave them a mortgage on my machinery, my horses, cattle and stuff and the increase.*" (Emphasis ours.)

The record shows that the above mentioned chattel mortgage dated April 8, 1927, was signed by defendant Kurz and given to the Silex Motor Company on the date mentioned. It was introduced in evidence as defendants' Exhibit 1, but as we have heretofore pointed out, it does not appear in the abstract of the record herein.

It is clear from plaintiff's cross-examination of defendant Kurz that plaintiff contended at the trial that the word "increase," as used in the Gooch mortgage of 1927, should be given a very restricted meaning. Plaintiff strongly urges here that defendants' evidence amounts to an admission that defendants wrongfully converted to their own use property to which plaintiff had the right of possession under its defaulted mortgages.

We are unable to agree with plaintiff's view as to the meaning of

the word "increase" as used in the Gooch mortgage of April 8, 1927. In Bouvier's Law Dictionary (Baldwin's Century Edition) it is said:

"The word offspring in its proper and natural sense extends to any degree of lineal descendants and has the same meaning as issue."

In Black's Law Dictionary we find the word "increase" is defined as "the offspring of animals."

In Sorrels v. Siegel-Campion Livestock Commission Co., 27 Colo. App. 154, 148 Pac. 279, 280, it was held that the word "increase" as used in a mortgage on sheep and the increase thereof referred to the progeny of such animals. The word "progeny" is defined in Webster's International Dictionary as "Descendents of the humankind or offspring of other animals."

In Stockyards Loan Co. v. Nichols (C. C. A., Okla.), 243 Fed. 511, 513, it was held that a mortgage on 500 head of cattle with "all increase thereof and accretions thereto" covered not only the offspring of the mortgaged cattle, but also cattle added to the herd by acquisition, and that the word "increase" as used in mortgages ordinarily means that which is added to the original stock by augmentation or growth, produce, profit, interest, progeny, issue or offspring.

In Heitzig v. Goetten, 347 Ill. 619, 180 N. E. 428, the word "increase" as used in a will directing that certain sums should be paid to the testator's daughter out of his estate or the increase thereof, it was held that the word "increase" means enlargement, growth, development, increment, addition, accession, extension, production, profit, interest, issue, offspring.

In re Touhy's Estate, 35 Mont., 431, 90 Pac. 170, the words "increase of all property" as used in an inheritance tax law which provided that the tax should be levied and collected upon "the increase of all property" within certain dates, include augmentation in value as well as multiplication in kind.

In King v. LaCrosse, 42 Minn. 488, 44 N. W. 517, it was held that the term "offspring" in a mortgage on mares and their offspring includes increase.

In Massingale v. Parker, 193 Ky. 523, 236 S. W. 959, which involved the construction of a parent's deed to a daughter "and the offspring of her body," the word "offspring" was held to be synonymous with issue, progeny or descendants, or lineal descendants.

In Lloyds Encyclopaedic Dictionary we find that the word "increase" is defined as follows:

"Increase.—Increment; that by which anything is increased; that which is added to the original stock and by which the original stock is augmented, enlarged or extended; accession."

Plaintiff cites the case of Rogers v. Gage, 59 Mo. App. 107, in support of its contention that the Gooch mortgage of April 8, 1927, did not cover the livestock described in the three mortgages given by

Kurz to plaintiff during 1932, notwithstanding the fact that the words "and the increase," following the description of the livestock, appear in the Gooch mortgage as stated by Kurz in his testimony. We do not regard the Rogers case as authority for plaintiff's view. The prior mortgage in the Rogers case did not contain any reference to the increase of the livestock described therein, which, of course, makes that case entirely different from the case at bar. In the Rogers case the court said:

"In the case before us as before stated, *the mortgage says nothing of increase of the animals*; and though the animals claimed by defendants under the subsequent mortgages are, in fact, the increase of the animals described in plaintiff's prior mortgages, yet there is nothing in the prior mortgages to so indicate." [Rogers v. Gage, supra, l. c. 113.] (Emphasis ours.)

The court then went on to hold in the Rogers case, supra, that under such a mortgage (that is one in which there was no mention of the increase of the livestock mortgaged), when the increase of the animals conveyed have passed beyond the period of nurture so that the very character and situation of the property itself would not be noticed, the mortgage did not cover such increase as against a subsequent mortgagee *of such increase*. [Rogers v. Gage, supra, l. c. 113.]

In the case at bar we have a prior mortgage of record containing language specifically covering the "increase" of the animals described therein, and which were at the time of the execution of the later mortgages in the possession of Kurz, the mortgagor.

The general rule with respect to the subject of increase or offspring of animals is stated in 3 Corpus Juris, page 22, section 19, as follows:

"1. General Rule. By virtue of the maxim, *partus sequitur ventrem* —the offspring follows the dam—the general rule of law is that the offspring of all tame and domestic animals belongs to the owner of the dam or mother, and such ownership continues until divested by some contract, express or implied.

"Increase of increase included. Generally the rule just stated includes the increase of the increase *ad infinitum*."

In Edmonston v. Wilson, 49 Mo. App. 491, 494, which was an action of replevin to recover the possession of a colt, the court said:

"The law is well settled in this State that the increase of the females of livestock belongs to the owner of the dam at the time."

In Stewart, Sheriff, to the use of Ashley, Trustee, v. Ball's Administrator, 33 Mo. 154, which was a suit brought on a bond given by the respondents therein to the appellant as sheriff to indemnify him for seizing and selling under an execution a brown mare claimed by Ashley, to whose use the suit was brought, the court said, l. c. 156:

"The property in controversy being the product of a mare conveyed by the deed, the title to it is in the same condition as is that

of the mare herself. The law is well settled that the increase of the females of live stock belongs to the owner of the dam at the time.''

In White v. Storms, 21 Mo. App. 288, which was an action in replevin to recover possession of a sow and a number of pigs, the court said, l. c. 289:

''But as applied to this case we see no objection to the instruction. 'The law is well settled that the increase of the females of live stock belongs to the owner of the dam at the time.' [Stewart v. Ball's, Adm'r, 33 Mo. 156.] The exception to this rule is, where the dam may be hired temporarily; the increase during the term belongs to the *usufructuary*. [2 Kent. Com. 360-1.] If the plaintiff be entitled to the benefit of this exception, he should show it. The defendant was in possession of the sow and her pigs, at the time of the institution of suit, and as such the defendant was presumptively the owner. Being the owner of the dam, she was presumably the owner of the increase.''

In American Trust & Savings Bank v. Gladu, 258 Ill. App. 156, the general rule was stated thus:

''Offspring of all animals as well as the growth and increase of property follows the ownership of the property itself.''

In O'Brien v. First Galesburg National Bank & Trust Co., 359 Ill. 415, 194 N. E. 562, the Supreme Court of Illinois, affirming a judgment of the Appellate Court of the Second District of Illinois in the same case (see 275 Ill. App. 176) held that unless there is some agreement to the contrary, the increase of domestic animals belongs to the owner of the dam, and that the increase of the increase *ad infinitum* comes within such rule.

In the case at bar plaintiff failed to show by any evidence whatsoever that defendant Kurz acquired any new or additional livestock by purchase between the date in 1927, when he executed and delivered the Gooch mortgage and the dates in 1932, when he gave to plaintiff the three mortgages. The evidence on the contrary affirmatively shows that Kurz did not make any such purchases. Therefore, the livestock which Kurz mortgaged to plaintiff in 1932 was either the original stock of 1927 or the *increase* thereof, as that word has been defined in the authorities heretofore referred to.

With respect to plaintiff's cause of action, there was no burden on defendants to disprove plaintiff's right to possession of the livestock in question. On the contrary, as to that feature of the case, the burden was upon plaintiff to establish by evidence that it was entitled to the possession of the livestock described in the chattel mortgages under which it was claiming, in order to sustain its charge against Kurz and Gooch that they had converted the livestock to their own use without plaintiff's consent. The evidence is not sufficient to show that plaintiff was entitled to the possession of the live-

stock in question at the time of the alleged conversion thereof by defendants because there was at that time outstanding against the livestock a prior mortgage, namely the Gooch mortgage, which had been of public record since April 12, 1927, of which mortgage plaintiff was bound to take notice. The evidence, therefore, instead of showing plaintiff's right to possession, affirmatively showed that plaintiff did not have the right to possession of the livestock at that time and hence there could be no conversion thereof by defendants as against plaintiff's right of possession, for plaintiff did not then have the right of possession. In this state of the record the court was, therefore, not warranted in submitting to the jury the question of the conversion by defendants of such live stock. Plaintiff had the burden of showing that it was entitled to the possession of the property in question before it could claim that defendants converted it to their own use without its consent. Plaintiff failed to make such a showing, and the court's action in correcting its own error by granting defendants a new trial on the ground that the verdict was against the evidence was correct, inasmuch as defendants each offered demurrers to the evidence at the close of plaintiff's case and at the close of all the evidence and in their motions for a new trial preserved their right to review the court's adverse rulings thereon.

Counsel for plaintiff have urged in their brief that, in the event we reach the conclusion that the court's action in granting a new trial was correct, we should determine the scope to be taken by such new trial and that we should eliminate issues already tried and disposed of. In some cases that would be a sound and proper course of procedure. However, in view of the nature of this case and the ground upon which we have based our conclusion that the court's action in granting a new trial was correct, we do not feel warranted in following the suggestion of counsel in this respect. We cannot tell what range the evidence on either side may take upon a new trial. We do not feel that we should attempt to anticipate what questions may arise during such a trial. In view of the nature of the case, we believe the ends of justice will be better served by leaving all parties free to present their respective claims and defenses according to such theories as they may adopt under the supervision of the trial court in the light of the experiences of the former trial.

The action of the court in granting defendants a new trial is affirmed. *Hostetter, P. J.*, not sitting; *Becker, J.*, concurs.